IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARCUS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:23-CV-527-KFP |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Marcus Williams filed this action seeking review of the Social Security Administration's decision to deny his application for supplemental security income (SSI). The Court construes Williams's supporting brief (Doc. 14) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 16) as a motion for summary judgment. After scrutiny of the record and motions submitted by the parties, the Court finds that Williams's motion is due to be DENIED, the Commissioner's motion is due to be GRANTED, and the decision of the Commissioner must be AFFIRMED.

**I.      STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.   PROCEDURAL BACKGROUND

Williams applied for SSI with an alleged disability onset date of November 3, 2019. R. 20. When his initial application and reconsideration appeal were denied, he requested a hearing before an Administrative Law Judge. *Id*. The ALJ issued an unfavorable decision on December 2, 2022. R. 20–35. Williams filed no response to the ALJ's decision. Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

## III.   THE ALJ'S DECISION

The ALJ found that Williams will continue to meet the disability insured status coverage requirements of the Social Security Act through December 31, 2024, and Williams has not engaged in any substantial gainful work activity since November 3, 2019. He determined that Williams suffered from certain severe physical impairments[1] but, with respect to his mental impairments, Williams did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in

---

[1] Williams's physical impairments are not at issue in this appeal.

20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). R. 25. Accordingly, he found Williams's medically determinable mental impairments of adjustment disorder with depression and anxiety to be non-severe. The ALJ then determined Williams's residual functional capacity (RFC), based solely on his physical impairments, and found that he was unable to perform any past relevant work. He also determined, based on Williams's age, education, work experience, and RFC, that jobs exist in the national economy that Williams can perform, specifically, a parts cleaner, small products assembler, and marker or labeler. R. 35. Thus, the ALJ concluded that Williams is not disabled. *Id*.

## IV. WILLIAMS'S ARGUMENTS

On appeal, Williams argues the ALJ failed to properly consider his mental conditions, creating error at step two by holding him to a higher burden than is required to satisfy the "threshold" inquiry of step two. This error, according to Williams, is compounded by the ALJ's failure to account for mental conditions in assessing the RFC and in the hypothetical posed to the Vocational Expert.[2] Doc. 14 at 6. In addition, Williams asserts that the ALJ improperly considered his medical conditions in evaluating the relevant medical opinions and that all the medical providers who assessed his mental impairments opined he had mental conditions that caused work-related limitations more restrictive than the ALJ's findings. *Id*. at 7. Thus, Williams argues, the ALJ impermissibly

---

[2] Because the Court finds the ALJ did not commit error at step two, the ALJ's assessment of the RFC, the hypothetical posed to the VE, and the ALJ's evaluation of the medical opinions were not erroneously impacted by the step-two determination. Additionally, there is no other challenge raised in the appeal as to the RFC or the hypothetical.

substituted his opinion for that of the medical professionals, and his opinion is not supported by substantial evidence. R. 8. In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Williams did not have a severe mental impairment or mental limitations. Doc. 16 at 4.

V. **DISCUSSION**

    A. **The Step-two Analysis**

In evaluating step-two challenges, the district court must determine whether substantial evidence supported the ALJ's findings that an impairment was not severe and instead was only a slight abnormality that would not be expected to interfere with an individual's ability to work. *Brady v. Heckler*, 724 F.2d 914, 920–21 (11th Cir. 1984). "'If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(c)). "With regard to step two of the sequential process, an impairment is severe if it significantly limits claimant's physical or mental ability to do basic work activities." *Manzo v. Comm'r of Soc. Sec.,* 408 F. App'x 265, 268 (11th Cir. 2011) (internal quotation marks and citation omitted). "Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits." *McDaniel*, 800 F.2d at 1031.

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*Id*. The regulations provide a special technique that must be followed when evaluating the severity of mental impairments for adults. 20 C.F.R. § 404.1520a(a). The special technique outlines four functional areas that must be rated for the degree of functional limitation resulting from a claimant's impairments. 20 C.F.R. § 404.1520a(c)(4). The four functional areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*.

> At the administrative law judge hearing . . . the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas.

*Id*. These four broad functional areas comprise the "paragraph B" criteria used in evaluating mental disorders under the Listing of Impairments. 20 C.F.R. Subpart P, App.1 § 12.00. To satisfy the "paragraph B" criteria, a mental disorder must result in an "extreme" limitation of one or a "marked" limitation of two of the four areas of mental functioning.

B.   **The ALJ's Finding at Step Two**

The ALJ found Williams had no limitations in the four functional areas.³ In doing so, he considered the findings of a November 2020 consultative psychological evaluation by Dr. David Ghostley (a state agency psychological examiner), Williams's treatment history, and his reported activities of daily living. Summarizing Dr. Ghostley's examination, the ALJ stated as follows:

> In November 2020, the claimant underwent a psychological consultative examination. The claimant denied a history of inpatient treatment for psychiatric condition. He reported not being prescribed psychiatric medication of any kind. [T]he claimant reported that he did not require assistance with activities of daily living. On mental status exam, the claimant exhibited good grooming and personal hygiene. Gait was normal. He was alert and attentive. Motor activity level was normal. Eye contact was good. He described his mood as mostly irritable and sometimes angry. He reported decreased sleep. *Affect was normal and appropriate. He was fully oriented. Attention was adequate for conversational purposes. He performed reverse serial 7s correctly. He was variably able to some simple mental arithmetic. He spelled "world" backward correctly. (3F, p. 2). Remote memory was intact. He recalled 3/3 verbally presented words following a brief delay with interference. His ability to think in abstract terms appeared low average. Insight appeared unimpaired.* Judgment in social situations may be impaired by low frustration tolerance. The claimant was assessed with adjustment disorder with mixed anxiety and depression. The examiner stated that should the claimant's physical pain be resolved it was likely that his mental symptoms would improve. (3F, p. 3).
>
> The above exam findings in the context of the claimant's reported activities of daily living and minimal treatment for mental health symptoms during the period at issue support the finding that the claimant has no limitations to the above capacities.

---

³ The ALJ initially states that Williams has *no* limitations and then states that he has no more than *mild* limitations. Because a finding of no or mild limitations in all four functional categories would be non-severe, the mistake is harmless.

R. 24 (emphasis in original). The above normal, unremarkable examination findings made by Dr. Ghostley do not indicate the presence of any mental impairments, and Williams has not pointed to any findings that would support a severe impairment. The ALJ properly considered the medical examination evidence to make a determination on the severity of Williams's mental health impairments. He acknowledged that Williams was diagnosed with an adjustment disorder with mixed anxiety and depression; however, his diagnosis does not demonstrate that he experiences more than mild limitations and the ALJ ultimately found that it did not significantly limit his mental ability to do basic work activities. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (finding that "the mere existence of these impairments does not reveal the extent to which they limit [his] ability to work or undermine the ALJ's determination in that regard"). This determination is supported by Dr. Ghostley noting Williams's overall appropriate and normal behavior during his mental examination where Williams was fully oriented, his affect was normal and appropriate, his attention for conversational purposes was adequate, his insight was unimpaired, and his remote memory was intact. Finally, Dr. Ghostley's finding that Williams's mental impairments would likely resolve if his physical impairments resolved demonstrates that Williams's mental impairments are secondary to his physical impairments and supports the ALJ's non-severe determination.

The ALJ also relied on Williams's treatment history and activities of daily living, as follows:

> The claimant testified at the hearing that he is not on any psychiatric medication. He testified that he has not engaged in mental health counseling. He reported an ability to drive, to cook, and to clean. During treatment in

7

> 2020 and 2021, the claimant was diagnosed with adjustment disorder with anxiety and depression; however, he stopped taking medications for this condition. (4F, p. 6; 5F, p. 4). Again, the claimant's ability to perform activities of daily living, his lack of consistent psychiatric care during the period at issue, and the above exam findings do not support the existen[ce] of limitations to his ability to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; or to adapt and manage himself.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitations in any of the functional areas, <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe (20 CFR 404.1520a(d)(1)).

R. 24 (emphasis in original).

The ALJ's reliance on Williams's daily living activities and minimal treatment for his mental impairments support a finding that Williams's mental impairments were non-severe. As for Williams's daily living activities, Williams testified that he drives himself to the grocery store, cooks himself breakfast, and cleans his bathroom. Nothing in the record demonstrates that Williams's mental impairments limited him in his daily activities, including taking care of himself. As for his treatment history, he lacked consistent psychiatric care, he did not take any psychiatric medication, and he did not engage in mental health counseling to alleviate any of his alleged symptoms during the period at issue. The evidence of Williams's minimal treatment history supports the ALJ's determination. *See Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992) (affirming ALJ's decision and holding ALJ's finding that claimant's mental impairment was non-severe was supported by substantial evidence where record "d[id] not . . . disclose that treatment has been recommended for [claimant's] condition"); *see also Manzo*, 408 F. App'x at 269

(holding that claimant "failed to carry her burden of establishing that her anxiety constituted a severe mental impairment, instead of a slight abnormality," and emphasizing that "[t]he ALJ in particular [found] that [claimant] had never been referred for mental health treatment").

Thus, Dr. Ghostley's examination, coupled with Williams's limited treatment history and daily activities, support the ALJ's finding that Williams's mental impairment caused no more than "mild" limitations in any of the functional areas and no more than a minimal limitation in Williams's ability to do basic work activities. Consequently, the evidence supports the ALJ's conclusion that Williams did not suffer from a severe mental impairment on account of his depression and anxiety.

Williams argues that his subjective complaints met the *Brady* standard and that the ALJ erroneously held him to a higher standard than *Brady* requires at step two. Doc. 14 at 7.[4] Williams asserts that he met the *Brady* standard by providing the ALJ with documentation that his mental conditions would cause limitations to his general ability to work. *Id*. He claims he filed for disability in part because he has depression from excessive nerve damage (R. 189), he deals with pain that causes him frustration (R. 204), he has been depressed ever since he lost his job and got divorced (*Id*.), he feels like he no longer fits in (R. 206), he cannot pay attention for long, he does not have a good ability to handle stress or change in routine (R. 208), he has unusual behaviors and fears (*Id*.), and his mental

---

[4] The *Brady* standard articulates the same requirements set forth for the step-two inquiry as stated in 20 C.F.R. §§ 404.1520(c) & 416.920(c). *See Brady*, 724 F.2d at 920 ("An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.").

health sometimes affects his physical health. R. 58, Doc. 14 at 7. The ALJ considered all of these subjective complaints. While they arguably can be characterized as support for Williams's assertion that his mental impairments are severe, the Court must not reweigh the evidence. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997). "So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005)); *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) ("Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ found Williams's subjective complaints unsupported by and inconsistent with the medical evidence, Williams's testimony on daily activities, and Williams's treatment history, all of which support a finding that his mental health conditions are slight abnormalities that have only a minimal effect on him and would not be expected to interfere with his ability to work, irrespective of age, education, or work experience.

      **B.**      **The ALJ's Consideration of the Relevant Medical Opinions**

Williams argues the ALJ's decision is not supported by substantial evidence because he improperly evaluated the opinions of the following three mental health providers at step two: Dr. Ghostley, who met with Williams in November, 2020 (R. 294–296); Dr. Harold Veits, a stage agency psychological consultant who reviewed Williams's medical records in January, 2021 (R. 75–80); and Dr. Donald Hinton, another state agency psychological

consultant who reviewed Williams's medical records in November, 2021 (R. 85). As mentioned above, Williams argues he was held to a higher burden than is required at step two to prove his mental impairments were severe because the three doctors found his mental impairments to be more restrictive than the ALJ's non-severe determination and opined that his medical conditions caused work-related limitations. According to Williams, then, the ALJ substituted his opinion for the doctors' opinions and disregarded the "only medical opinions regarding mental health conditions in the record." Doc. 17 at 2.

The applicable regulations provide that an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).

> Under the new regulations, an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ may, but need not, explain how he considered factors other than supportability and consistency, which are the most important factors. *See id.* § 404.1520c(b)(2).

*Glasby v. Soc. Sec. Admin., Comm'r*, No. 21-12093, 2022 WL 1214015, at *2 (11th Cir. Apr. 25, 2022). Accordingly, the ALJ was not required to give weight to any of the medical opinions relating to Williams's mental impairments to satisfy the substantial evidence requirement. The ALJ was simply required to review the medical opinions and determine their persuasiveness. If, like here, an ALJ finds a medical opinion unpersuasive or comes to a determination that differs from a medical opinion and that finding is based on substantial evidence, the Court will affirm the ALJ's decision.

### 1.     The Opinion of Dr. Ghostley

As explained above, Dr. Ghostley's findings from his mental status examination of Williams were unremarkable, and the ALJ relied on those findings regarding affect, orientation, attention, mental arithmetic, spelling, memory, recall, ability to think in abstract terms, and insight in determining that Williams had no limitations in those capacities. R. 24. In his opinion, Dr. Ghostley found that Williams's ability to function independently and manage finances was unimpaired, but he also found that Williams's ability to understand, remember, and carry-out instructions was "perhaps" mildly impaired and that his ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting was moderately to markedly impaired due to low stress tolerance. R. 296. The ALJ found Dr. Ghostley's assessments regarding mild and moderate-to-markedly impaired limitations unpersuasive because they were unsupported and inconsistent with the results of Dr. Ghostley's mental status examination, Williams's minimal treatment history, and his own testimony regarding his activities of daily living.

Pursuant to the regulations discussed above, the ALJ explained "how he considered the factors of supportability and consistency" and was "not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020)." *Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *5–6 (N.D. Ala. July 22, 2021). In regards to supportability, the ALJ found that Dr. Ghostley's opinion was not supported by the examination that resulted in unremarkable findings. R. 32, 295–296. Further, although Dr. Ghostley opined that Williams's judgment regarding "social functioning and family relationships may be impaired by low frustration tolerance, irritability, and anger secondary

to pain", he concluded that "should [Williams's] physical pain be resolved it was likely that his mental symptoms would improve." R. 296. Accordingly, the ALJ sufficiently established that Dr. Ghostley's opinion as to the mild and moderate-to-markedly impaired limitations was not supported by the record.

In regards to consistency, the ALJ found Dr. Ghostley's opinion inconsistent with Williams's self-reported daily activities and his limited treatment history. R. 32. Williams testified that he drove himself to the grocery store, made himself breakfast, and cleaned up after himself. He was never terminated from a job because of any issues relating to his mental impairments[5] and there is nothing in the record that suggests that he had any issues with his previous supervisors or co-workers. While Dr. Ghostley noted that Williams's judgment in social situations may be impaired by low frustration tolerance, there is nothing in the record that reflects Williams experienced any issues in social settings. Further, Williams testified that he regularly spent time with his family and did not report that his anxiety or depression impacted these interactions. Additionally, at the time of the hearing, Williams was not taking any medication for his mental impairments and had not received any mental health counseling. The ALJ considered the evidence noted above; therefore, the Court concludes that the ALJ's determination that Dr. Ghostley's opinion regarding the mild and mild-to-moderate limitations was inconsistent with the record is supported by substantial evidence.

---

[5] Williams worked as a freezer room worker and bag machine packager for a company that shut down in 2019. R. 51, 64–65. After the company shut down, Williams worked for Walmart for two weeks but stopped working there because he endured a new physical injury. R. 52. After, Williams was hired at a peanut plant but was let go after two weeks because he has a peanut allergy. R. 54.

The Court also finds that substantial evidence supports the ALJ's determination that the opinion was unpersuasive.

### 2. The Opinions of Drs. Veits and Hinton

In January 2021, Dr. Veits performed a consultative examination and opined that Williams had no limitations in the area of understanding or memory. R. 78. With respect to concentration or persistence, he had no significant limitations except in the abilities to carry out detailed instructions and maintain attention and concentration for extended periods, which were moderately limited. With respect to social interaction, he was not significantly limited except with respect to interacting appropriately with the general public and accepting instructions and responding appropriately to criticism from supervisors, which he was moderately limited. R. 78–79. Dr. Veits noted that Williams alleged depression due to nerve pain and that he reported a low tolerance for stress and change, and he offered the "additional explanations" that further found Williams's ability to function independently and manage finances unimpaired; his ability to understand, remember, and carry-out instructions mildly impaired; and his ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting moderately-to-markedly impaired due to low stress tolerance. R. 79.

In November 2021, Dr. Hinton, performed a second consultative examination and found that Williams's mental disorders were "non-severe" and that he had only mild limitations in each of the four areas of mental functioning. R. 84. Dr. Hinton noted Williams's report that he was not referred to a psychiatrist or therapist; that constantly dealing with his left arm pain was what kept him from focusing; and that he could focus,

pay attention, follow instructions, handle stress, and handle change in routine if he were not in pain. In reaching his conclusion, Dr. Hinton referenced Dr. Ghostley's opinion that Williams's irritability, anger, and depression would likely resolve if his physical pain resolved. R. 85.

The ALJ found both of the above opinions unpersuasive because they were "poorly supported and inconsistent" with the medical evidence of record, with the results of Dr. Ghostley's psychological consultative examination, with Williams's minimal mental health treatment, and with Williams's own testimony regarding his activities of daily living. R. 32. Again, Dr. Ghostley's examination revealed that Williams was alert and attentive, his remote memory was unimpaired, he was fully oriented, and his mental impairments would likely resolve once his physical impairments did. These normal findings support the ALJ's determination that the other opinions were unpersuasive. In addition, Williams's treatment history shows that Williams was not prescribed any medication and was not being treated for psychiatric condition during the relevant period of time. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (citing SSR 96–7p) ("[T]he ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints."). Finally, Williams's activities of daily living demonstrate that he did not need assistance with activities of daily living. The ALJ reviewed the record in its entirety and found Drs. Veits, Hinton, and portions of Ghostley's opinions to be unpersuasive as they were inconsistent and unsupported by the evidence listed above, and the Court finds that substantial evidence supports the ALJ's determination.

Notably, neither Dr. Veits, Dr. Hinton, nor Dr. Ghostley opined that Williams had a mental disorder resulting in an extreme limitation in any of the four areas of mental functioning or marked limitations in two of the four areas of mental functioning. Consequently, if the ALJ had adopted any of the three doctors' opinions, Williams would still not satisfy the "paragraph B" criteria.

## VI.   CONCLUSION

For the above reasons, Williams's arguments fail. "Under a substantial evidence standard of review, [Williams] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Williams failed to meet that burden. The Court finds that Dr. Ghostley's examination findings, Williams's lack of treatment, and his activities of daily living constitute substantial evidence supporting the ALJ's finding at step two that Williams lacks limitations in his ability to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; or to adapt and manage himself. Therefore, the evidence supports the ALJ's finding that Williams's mental impairments were non-severe.

The Court "'may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner],'" but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles,* 84 F.3d at 1400 (quoting *Bloodsworth,* 703 F.2d at 1239). Accordingly, the Court concludes that the ALJ did not hold Williams to a higher burden at the "threshold" inquiry of step two and that he relied

on substantial evidence in determining Williams's mental impairments were non-severe. Thus, the Court must affirm the ALJ's decision.

Accordingly, it is ORDERED as follows:

1. Williams's motion for summary judgment (Doc. 14) is DENIED.

2. The Commissioner's motion for summary judgment (Doc. 16) is GRANTED.

3. The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 12th day of April, 2024.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE